James D. HODGSON, Secretary of Labor,
United States Department of Labor,
Plaintiff,

v.

J. M. FIELDS, INC., Defendant.

Civ. No. 68–104.

United States District Court,
M. D. Florida,
Orlando Division.

June 24, 1971.

Beverley R. Worrell, Regional Sol., U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

Eli H. Subin, Roth, Segal & Levine, Orlando, Fla., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE C. YOUNG, District Judge.

This action was brought by the Secretary of Labor as plaintiff, against defendant, J. M. Fields, Inc., seeking to enjoin alleged violations of the Fair Labor Standards Act of 1938, Title 29, United States Code, § 201 et seq. and to restrain the defendant from withholding payment of back wages due employees under the Act.

The gist of the action is the claim that defendant in its Tallahassee, Eau Gallie and Merritt Island, Florida stores, since June 15, 1965 has discriminated in that class of employees known as "Area Supervisors"[1] on the basis of sex by paying women lower wages than men for work requiring equal skill, effort, and responsibility, and performed under similar working conditions.

---

1. With the exception of those persons in charge of supervising the stock room and the major appliances departments which positions the Secretary does not challenge.

The Court, having heard the evidence and arguments of counsel and having considered the post trial briefs, makes the following Findings of Fact and Conclusions of Law and Order for Judgment herein:

## FINDINGS OF FACT

1. The involved stores, operated by the defendant, are essentially self service discount retail establishments handling a broad range of merchandise.

2. During the period in question there existed in defendant's stores a job classification "Area Supervisor".

3. An Area Supervisor was responsible for the general management of one or more departments such as housewares, lamps, rugs, glassware, toys, sporting goods, radios, traffic appliances, health and beauty aids, garden shop, pets, domestics, drapes, bath shop, cameras, records, ladies' wear, notions, luggage, mens' wear, boys' wear, girls' wear, infants' wear, bras, panties, slips, hosiery, mens' socks, ladies' sportswear, handbags, and shoes.

4. The duties of an Area Supervisor in charge of one or more of these departments included, but were not limited to:

(a) Supervision of floor personnel.

(b) Customer assistance.

(c) Quality control of merchandise.

(d) Comparison shopping.

(e) Recommendations as to price mark downs on merchandise.

(f) Relief of the "front" supervisor during lunch and breaks.

(g) Recognition and ordering of "hot items" or items that were selling well.

5. In retail merchandising there are recognized two broad lines of goods; softlines which are clothing, and hardlines which are all lines but clothing.

6. In the defendant's stores there existed in the softlines departments an automatic replenishment system whereby one-half of the sales ticket on the items sold was torn off and collected by the cashier and then sent to a central office from which replacement stock was ordered.

7. In the hardlines departments ordering was accomplished by means of "preprint" books, which orders were initiated by the Area Supervisor on the basis of the inventory level.

8. The method of ordering in the hardline departments imposes on those Area Supervisors an added responsibility which required a substantial portion of their working time.[2]

9. The skill and responsibility required of hardline managers is substantially greater than that required of softline managers.

10. From September 26, 1966 until February 1, 1969, men Area Supervisors of softline departments in defendant's Tallahassee store were paid an average of $.35 per hour more than women.[3]

11. There has been no wage discrimination on the basis of sex among Area Supervisors in charge of softline departments of the Tallahassee store since February 1, 1969.

12. From February 8, 1966 until August 15, 1969 (which is as far as the personnel records for men Area Supervisors in charge of hardlines at defendant's Tallahassee store are complete), men Area Supervisors of hardline departments in the Tallahassee store were paid an average of $.45 per hour more than women. (Table "B").

13. As of August 15, 1969, men Area Supervisors in charge of hardlines at defendant's Tallahassee store were being

2. Witness Peggy Smith, a Tallahassee hardlines supervisor testified that she spent four hours a day working on the pre-print books.

3. This figure represents the approximate average hourly wage differential over the 28 months from September 26, 1966 to February 1, 1969, as compiled from table "A". Table "A" was prepared from the Tallahassee employees personnel records (Plaintiff's Exhibit 3). This same method was used in compiling all wage discrepancies.

paid an average of $.35 per hour more than women. (Table "B").

14. From June 15, 1965 until May 4, 1969, men Area Supervisors of hardline departments in defendant's Eau Gallie store were paid an average of $.27 per hour more than women. (Table "C").

15. There has been no wage discrimination on the basis of sex among Area Supervisors in charge of hardline departments of the Eau Gallie store since May 4, 1969.

16. The evidence does not establish that women Area Supervisors of softline departments in defendant's Eau Gallie store were paid less than men.

17. From June 15, 1965 until her termination, November 22, 1966, Mildred Sutherland, for managing the hardline department of health and beauty aids, received $.40 per hour less than men Area Supervisors of hardline departments in the Merritt Island store. (Table "D").

18. From May 8, 1967 until December 28, 1969, Shirley Giannia, for managing the hardline departments of domestics and drapes, received $.20 per hour less then men Area Supervisors of hardline departments in the Merritt Island store. (Table "D").

19. There has been no wage discrimination on the basis of sex among Area Supervisors in charge of hardline departments in the Merritt Island store since December 28, 1969.

20. The evidence does not establish that women Area Supervisors of softline departments in defendant's Merritt Island store were paid less than men.

21. With regard to the wage discrepancies in findings 10, 12, 13, 14, 17 and 18, J. M. Fields, during the periods in question, hired and paid its employees at whatever rate it could get them, the overall result of which was to discriminate against women. (Although there were a few instances in which men employees were paid less than women, it is the overall effect with which the Court is concerned.)

22. The jobs of hardline and softline managers differ substantially so that they should not be compared for purposes of the Equal Pay Act.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and subject matter. Title 29, United States Code, § 217.

2. Because the wage discrepancies in findings 10, 12, 13, 14, 17 and 18 were discriminations on the basis of sex, they constituted violations of the Equal Pay Act.

3. The violation of the Equal Pay Act in the hardline departments of defendant's Tallahassee store were continuing as of August 15, 1969, the last date for which personnel records sufficient to determine a violation were available.

4. The violations were and are not willful. Although, as noted in finding 21, the defendant's hiring practice had the overall effect of discrimination in some lines against women, that was a result and not an intentional purpose of defendant in its employment practices. Therefore, the two year statute of limitations is applicable, and actions for any wage discriminations prior to June 14, 1966 are barred. Title 29, United States Code, § 255(a).

5. The plaintiff is entitled to an injunction, enjoining defendant from future wage discrimination on the basis of sex in any of its stores.

6. Each female employee whose pay was less than the average paid to men during the periods of wage discrimination covered in findings 10, 12, 13, 14, 17 and 18, subsequent to June 14, 1966, is entitled to payment from the defendant of the difference between such average men's pay and the wage actually paid such female employee.

Counsel for plaintiff shall prepare, within thirty (30) days from date hereof, a proposed judgment in accordance with the foregoing. The average of men's pay to be used in computing the unpaid wages due to each individual female employee is the average designated by the solid lines on the applicable one of the tables appended hereto.

734

"TABLE A"

TALLAHASSEE - SOFTLINES

[A4543]

"TABLE B"

TALLAHASSEE - HARDLINES

[A4544]

MEN

WOMEN

JAN 1965  JAN 1966  JAN 1967  JAN 1968  JAN 1969  JAN 1970

"TABLE C"

EAU GALLIE - HARDLINES

[A4545]

MEN ————

MILDRED SUTHERLAND ••••••••••••••••

SHIRLEY GIANNINA ———————

"TABLE D"

MERRITT ISLAND - HARDLINES